UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| XIAOYE BAI, | Case No. 2:20-cv-02192-RFB-EJY |
| Plaintiff, | **ORDER** |
| v. | **and** |
| CAVLIN JOHNSON, *et al*., | **REPORT AND RECOMMENDATION** |
| Defendants. | RE:  ECF No. 69 |

Before the Court is Plaintiff Xiaoye Bai's Second Amended Complaint (the "SAC") filed following the Court's May 6, 2022 Order allowing him to do so.  ECF No. 69.  The Court screens the SAC under the standard established by 28 U.S.C. § 1915A(a).  *See Caballero v. Aranas*, Case No. 3:19-cv-00079-MMD-CLB, 2020 WL 3546853, at *3 (D. Nev. June 29, 2020).

**I.      The Screening Standard.**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1), (2).  Pro se pleadings, however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act, a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

A reviewing court should "begin by identifying [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on

fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    Summary of Facts Alleged in the SAC.

A.    Facts Alleged Regarding September 3, 2019 Through November 24, 2021.

On September 3, 2019, Plaintiff broke both legs and ankles jumping over a fence at Southern Desert Correctional Center.   ECF No. 71 at 5.   While Plaintiff was recovering from surgery, Defendants Holguin and Qaderi, who were assigned to Plaintiff's unit, forced Plaintiff to retrieve his own meals from the tray slot despite Plaintiff's limited mobility.  *Id*. at 5-6.  This pattern continued until Plaintiff fell and was knocked unconscious on September 18, 2019 after Holguin and Qaderi refused to bring Plaintiff his meals.  *Id*. at 6.  Plaintiff states he laid on the ground all night.  *Id*.  On September 20, Plaintiff underwent a second surgery and says he was again ignored when asking Holguin and Qaderi for help.  *Id*.  Plaintiff complained to Holguin and Qaderi's supervisor allegedly leading these Defendants to file a false disciplinary action against him, use racial epithets, turn the water off in Plaintiff's unit, leave the lights on at night to keep Plaintiff awake, and interfere with Plaintiff's use of the grievance process.  *Id.* at 6-7.

During the same time period, Plaintiff alleges he received insufficient treatment for his injuries from High Desert State Prison ("HDSP") medical staff.  *Id.* at 7.  Plaintiff states Defendants Cabrera and Faulkner delayed and rescheduled treatments, failed to fulfill doctor's orders to provide Plaintiff with prescribed medications, failed to provide him "keep on person" ("KOP") medication, and refused to provide leg braces prescribed for his condition.  *Id.* at 7-9.  Plaintiff avers Defendant Christy explicitly refused to treat Plaintiff when she walked out of Plaintiff's unit neglecting to check on him despite worsening injuries and an infection.  Plaintiff contends this lack of care resulted in a "man down" code called by the unit supervisor on April 29, 2020.  *Id.* at 8.  Plaintiff further alleges Defendant Zelaya refused to respond to Plaintiff's medical kites.  *Id.* at 7.  All told, Plaintiff argues that Defendants' non-responsiveness to his medical needs led to his legs and ankles becoming increasingly swollen and his wounds becoming infected.  *Id.* at 8.

Plaintiff further contends Defendant Zelaya conducted a disciplinary hearing at which Plaintiff was denied due process and ultimately found guilty of various charges in connection with

1    events of September 3, 2019. *Id.* at 7. Plaintiff also accuses Zelaya of intentionally destroying
2    relevant audio evidence to cover up Zelaya's alleged wrongdoing. *Id.*

3        Plaintiff says he was placed in segregation confinement for over a year in retaliation for
4    speaking out against prison staff. *Id.* at 7-9. Plaintiff was released from segregation on February 4,
5    2021, but alleges Defendant Johnson placed him back on High Risk Prisoner status on February 11,
6    2021 without explanation or due process.

7        Plaintiff contends that after his attempted escape, $50,029.87 was deducted from his inmate
8    account by Defendant Rudolph without authorization, adequate explanation or due process. *Id.* at 7-
9    9. Plaintiff contends HDSP banking withdrew funds leaving Plaintiff hundreds of dollars in debt. *Id.*
10   According to Plaintiff, at one point Defendant Garret told Plaintiff the deduction was assessed against
11   his escape attempt, but the actual deduction did not match the amount Garret disclosed. *Id.*

12       Plaintiff next accuses Defendant Treadwell of tearing up an email telling Plaintiff how to
13   obtain documents related to his civil rights claims. *Id.* at 10. Plaintiff also alleges Treadwell
14   intentionally interfered with his request to review sealed documents and then filed a false disciplinary
15   report about Plaintiff after Plaintiff filed a grievance complaining about Treadwell. *Id.*

16       Plaintiff contends Defendant McKeehan filed a false report against him for tampering with a
17   locked door that Plaintiff says was a misunderstanding arising from Plaintiff's limited English. *Id.*
18   at 10-11. Plaintiff avers the report was filed in retaliation for the instant lawsuit as Plaintiff was
19   attempting to access a conference room for a teleconference with the Attorney General's Office. *Id.*

20       Finally, Plaintiff alleges HDSP mailroom officials took his property (including clothing,
21   books, magazines, photos, and hygiene supplies) without authorization. *Id.* at 10. Plaintiff filed
22   grievances with Defendant Johnson to address the alleged property confiscation and did not receive
23   a meaningful response. *Id.*

24       B.    Facts Alleged Regarding November 24, 2021 Through March 9, 2022.

25       Plaintiff alleges his transfer to Ely State Prison ("ESP") on November 24, 2021 by Defendants
26   Johnson and Powers was in retaliation for exercise of his free speech rights. *Id.* at 11-12. Plaintiff
27   contends the transfer caused his KOP medications to be inventoried incorrectly resulting in a missed
28   scheduled visit with his family who flew from China to see him. *Id.* at 12.

Plaintiff also avers the ESP staff continuously failed to address his medical needs despite doctors' recommendations.  And, Plaintiff says Defendant Rivas rejected Plaintiff's prior doctors' recommendation for controlling Plaintiff's arthritis pain, providing no alternative course of treatment. *Id.*

Plaintiff reports a series of retaliatory acts in connection with a January 25, 2022 effort organized by Plaintiff and fellow prisoners to close their food slots in protest of prison conditions. *Id.* at 12-13.  Plaintiff says he was given an alternate "loaf diet" meal in retaliation for the protest. *Id*.

C.    Facts Alleged Regarding March 9, 2022 to May 12, 2022.

Plaintiff was transferred back to HDSP on March 9, 2022, after which Plaintiff says Defendants Johnson and Oliver placed him in administrative segregation without explanation or due process. *Id.* at 13.  Plaintiff alleges he was in administrative segregation for over 30 months, or 900 days, without having engaged in bad behavior. *Id.*  Plaintiff also alleges Defendant Oliver ordered full chains and shackle restraints on Plaintiff's wrists, legs, and ankles every time he went to the prison yard despite his continued ankle injury. *Id.*

**III.    Plaintiff's claims**.

Plaintiff brings the following causes of action under 42 U.S.C. § 1983:

- Deliberate indifference under the Eighth and Fourteenth Amendments against Defendants Cabrera, Faulkner, Rivas, and Minev ("Claim 1"). *Id.* at 15-17;

- Violations of the First Amendment, Eighth Amendment deliberate indifference ("Claim 2"), and Fourteenth Amendment Due Process and Equal Protection Clause ("Claim 3") against Defendants Holguin, Qaderi, Christy, Treadwell, McKeehan, Powers, Johnson, Reubart, Stolk, Rigney, and Oliver. *Id.* at 17-22;

- Fourteenth Amendment Due Process Clause and First Amendment claims against Defendants Zelaya, Rudolph, and Garrett ("Claim 4"), and claims for supervisory liability and deliberate indifference against Defendants Daniels and Minev ("Claim 5"). *Id.* at 22-27; and

- Claims under 28 U.S.C. § 242, 42 U.S.C. § 15601, and 28 C.F.R. § 115.

Plaintiff also asserts a number of state law claims against (1) Cabrera, Faulkner, Rivas, and Minev under NRS 49.265, 209.291, and 209.381, et. seq.; (2) Holguin, Qaderi, Christy, Treadwell, McKeehan, Powers, Johnson, Reubart, Stolk, Rigney, and Oliver under NRS 209.131 and 209.381, et. seq.; (3) Zelaya under NRS 209.356 and 209.369, et. seq; (4) Rudolph, Johnson, Garrett, Reubart,

1    Zelaya, and Faulkner under NRS 41.0322, 209.243, 209.247, 209.251, and 209.885, et seq.; and (5)

2    Daniels and Minev under NRS "chapter 209, et. seq." and chapter 41 of the Nevada Administrative

3    Code ("NAC").  ECF No. 71 at 15, 17, 22, 23, 26.

4    **IV.    Screening Plaintiff's SAC**

5         A.    <u>Claim 1: Eighth and Fourteenth Amendment Violations Against Defendants Cabrera,
          Faulkner, Christy, Rivas, Oliver, and Minev.</u>

6

7              i.    *Eighth Amendment deliberate indifference to a serious medical need.*

8         The Eighth Amendment prohibits the imposition of cruel and unusual punishment and

9    "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"

10   *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when

11   he acts with "deliberate indifference" to the serious medical needs of an inmate.  *Farmer v. Brennan*,

12   511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy

13   both an objective standard—that the deprivation was serious enough to constitute cruel and unusual

14   punishment—and a subjective standard—deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978,

15   985 (9th Cir. 2012).

16        To establish the first prong of an Eighth Amendment violation "the plaintiff must show a

17   serious medical need by demonstrating that failure to treat a prisoner's condition could result in

18   further significant injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d

19   1091, 1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference prong,

20   a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible

21   medical need and (b) harm caused by the indifference."  *Id.*  "Indifference may appear when prison

22   officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way

23   in which prison physicians provide medical care."  *Id.* (internal quotations omitted).  When a prisoner

24   alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that

25   the delay led to further injury.  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

26   (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of

27   deliberate medical indifference").

28

### a.  Defendant Cabrera.

Plaintiff alleges Defendant Cabrera: (1) failed to provide KOP prescribed "medications and relevant medical appliances"; (2) repeatedly delayed and rescheduled Plaintiff's doctors' appointments; and (3) failed to respond to Plaintiff's medical grievances and kites.  ECF No. 71 at 15.  The Court finds Plaintiff's deliberate indifference claim against Cabrera survives screening.

Plaintiff alleges Cabrera failed to provide braces prescribed to assist with his leg and ankle recovery, and includes specific dates on which Cabrera allegedly cancelled and rescheduled Plaintiff's appointment with Dr. Wulff without explanation.  *Id.* at 7, 11.  Plaintiff alleges his condition worsened "due to constant lack[] of treatment and relevant medical appliances." *Id.* at 11. Plaintiff contends the delays and cancellations ultimately necessitated his referral to a foot and ankle specialist for surgery.  *Id.*  Given that Cabrera is allegedly responsible for scheduling and ensuring inmates receive prescribed medical treatment, Plaintiff's alleged facts are sufficient to support a claim for deliberate indifference against this Defendant.  *Jett*, 439 F.3d at 1096.

### b.  Defendant Faulkner.

Plaintiff avers Defendant Faulkner, the HDSP Director of Nursing, failed to respond to Plaintiff's incident report alleging Christy refused to treat Plaintiff resulting in a "man down" due to Plaintiff's worsening injuries.  ECF No. 71 at 15.  Unfortunately, Plaintiff supports his claims primarily by citing to the Court's first Screening Order (ECF No. 11), which was rendered a nullity when Plaintiff filed his SAC.  *See Choate v. Weidick*, Case No. 2:18-cv-01958-JAD-DJA, 2022 WL 19671, at *3 (D. Nev. Jan. 3, 2022) ("Amended pleadings supersede (replace) all prior pleadings."). In any event, Plaintiff cannot rely on the contents of the Court's Screening Order to establish facts in support of his claims.  Plaintiff is therefore left with a single-sentence allegation against Faulkner in support of his deliberate indifference claim.  This single sentence is insufficient to establish the violation alleged.  The Court therefore recommends dismissal without prejudice of Plaintiff's Eighth Amendment claim against Faulkner.

### c.  Defendant Christy.

Plaintiff alleges Defendant Christy failed to respond when Plaintiff called "man down" in response to his worsening leg and ankle pain arising from the lack of medically necessary braces.

ECF No. 71 at 17-18.  Plaintiff alleges the unit officer had to call the medical infirmary on Plaintiff's behalf.  *Id.*  Plaintiff says Christy, who was in the unit at the time, ignored him entirely and later refused to provide any treatment for his swollen ankle, leaving Plaintiff in pain "with an infected wound that was actively bleeding."  *Id.*  Plaintiff states Christy told Plaintiff she was charging him for the "man-down" before she left.  *Id.*  These allegation sufficiently support a facially valid Eighth Amendment claim arising from a purposeful failure to respond to a serious medical need.  Plaintiff may proceed on his Eighth Amendment claim against Christy.

### d.    Defendants Rivas and Oliver.

Plaintiff alleges Defendant Rivas, newly appointed senior physician at HDSP, denied him a supplemental recommendation for osteoarthritis pain and failed to provide reasonable alternative treatment.  ECF No. 71 at 16.  Plaintiff accuses Rivas of "fail[ing] to inform HDSP officials [of] the Plaintiff's ongoing medical issue and pending medical ev[aluation]" that caused him "increasing irreparable harm" related to his transfers "back and forth between … HDSP and ESP" in which medical supplies were lost.  *Id.*  Plaintiff also accuses Rivas of going along with Defendant Oliver's decision to shackle Plaintiff's legs and ankles every time Plaintiff went to the yard despite Plaintiff's ankle and leg surgery.  *Id.*

The Court finds Plaintiff fails to allege sufficient facts to state a claim for deliberate indifference against Defendant Rivas.  There is no allegation that Rivas, a health care provider, played a role in the decision to transfer Plaintiff to ESP.  Moreover, Rivas's decision to deny Plaintiff a supplement recommended by a prior doctor does not amount to deliberate indifference to a serious medical need.  Likewise, Rivas's alleged failure to communicate Plaintiff's medical needs to the relevant officials resulting in his KOP medications supposedly getting mis-inventoried does not support a deliberate indifference claim. *See Edmo v. Corizon, Inc.*, 949 F.3d 489, 495 (9th Cir. 2020), *quoting Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) ("mere 'indifference,' 'negligence,' or 'medical malpractice' is not enough to constitute deliberate indifference").  Overall, Plaintiff fails to allege sufficient facts demonstrating Rivas committed a "purposeful act" of indifference or otherwise intentionally disregarded Plaintiff's serious medical need. *See Jett*, 439 F.3d at 1096.

1    The Court also finds Plaintiff's contention that he fell several times while attempting to walk

2    in shackles, ordered and then endorsed by Defendants Oliver and Rivas respectively, do not survive

3    screening for an Eighth Amendment deliberate indifference claim.  *See Jett*, 439 F.3d at 1096.  To

4    state an Eighth Amendment claim based on the use of restraints exacerbating an injury the plaintiff

5    must allege the defendants were aware of the injury in question.  *Windham v. California Dep't of*

6    *Corr.*, Case No. CIV S05-0954-GEB-GGH-P, 2009 WL 57622, at *10 (E.D. Cal. Jan. 9, 2009);

7    *Walker v. Crossroads Corr. Ctr.*, Case No. CV 19-00073-GF-JTJ, 2022 WL 539162, at *6 (D. Mont.

8    Feb. 23, 2022) (finding plaintiff's complaints that restraints were causing him pain was insufficient

9    to support a deliberate indifference claim where the guards did not know of the preexisting wrist

10   injury).  Knowledge of a plaintiff's pre-existing injuries are insufficient to establish deliberate

11   indifference where the defendant was unaware restraints aggravated such injuries.  *Id.*  Here, Plaintiff

12   fails to allege facts supporting the conclusion that his ankle and leg injuries were sufficiently evident

13   to Defendants or that Defendants were aware of aggravated injuries to support a facially valid

14   deliberate indifference claim.  For this reason, the Court recommends dismissal of Plaintiff's

15   deliberate indifference claim against Rivas and Oliver without prejudice.

16   *ii.    Plaintiff's Fourteenth Amendment Equal Protection Claims.*

17   Plaintiff alleges a violation against Defendants Cabrera, Faulkner, Christy, Rivas, Oliver,

18   and Minev for violations of the Fourteenth Amendment Equal Protection Clause.  ECF No. 71 at 15.

19   However, other than identifying these Defendants and the claim, Plaintiff fails to refer to the

20   Fourteenth Amendment, facts supporting an Equal Protection violation or any other basis for

21   inferring a violation of Plaintiff's rights by Cabrera, Faulkner, Christy, Rivas, or Minev.  Plaintiff

22   avers a single allegation against Oliver.  *Id.* at 21 (alleging Oliver ordered Plaintiff shackled "only

23   based upon his race and alien background").  Because neither Plaintiff's single allegation nor the

24   identification of the Equal Protection clause adequately plead a Fourteenth Amendment Equal

25   Protection cause of action, the Court recommends these claims against Defendants Cabrera,

26   Faulkner, Christy, Rivas, Oliver, and Minev be dismissed without prejudice.

27

28

9

1

2

B.    Claim 2: Plaintiff's First, Eighth, and Fourteenth Amendment Violations Against Defendants Holguin, Qaderi, Christy, Cabrera, Treadwell, McKeehan, Powers, Johnson, Reubart, Stolk, Rigney, and Oliver.

3

i.    *First Amendment Retaliation*.

4    Prisoners have a First Amendment right to file prison grievances and to pursue civil rights

5    litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those

6    bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison

7    injustices." *Id.* "Purely retaliatory actions taken against a prisoner for" exercising First Amendment

8    rights "necessarily undermine" these protections and thereby violates "the Constitution quite apart

9    from any underlying misconduct they are designed to shield." *Id.* To state a viable First Amendment

10    retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took

11    some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

12    such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

13    reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is

14    enough if an official's acts would chill or silence a person of ordinary firmness from future First

15    Amendment activities. *Id.* at 568-69.

16

**a.    Defendants Holguin and Qaderi**.

17    As stated above, Plaintiff alleges Holguin and Qaderi committed an Eighth Amendment

18    violation when they left Plaintiff unconscious on the floor after refusing to bring Plaintiff his meals.

19    ECF No. 71 at 6. Thereafter, Plaintiff says he filed grievances against Holguin and Qaderi for

20    ignoring his requests for help. Plaintiff claims that because of his grievances, Holguin and Qaderi

21    started calling him racial slurs, intentionally left the light on to disrupt his sleep, filed false

22    disciplinary charges against him, and turned off the water in Plaintiff's unit so that he could not use

23    the toilet at night. *Id.* at 6-7. Plaintiff states this conduct began the day after Qaderi and Holguin

24    noticed Plaintiff submitted his grievances. *Id.* at 6. The false disciplinary charge was allegedly filed

25    about two months after his grievance filing. *Id.* at 6-7. As the Ninth Circuit explains: "[d]epending

26    on the circumstances, three to eight months is easily within a time range that can support an inference

27    of retaliation." *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003).

28

1    Plaintiff's alleges facts that state a First Amendment retaliation claim. Holguin and Qaderi's

2    conduct, if proven to be true, would chill a person's exercise of First Amendment rights. *See Rhodes*,

3    408 F.3d at 567; *Harris v. Pimentel*, Case No. 1:13-cv-01354-LJO-MJ, 2015 WL 521419, at *2 (E.D.

4    Cal. Feb. 9, 2015), report and recommendation adopted, Case No. 1:13-cv-01354-LJO, 2015 WL

5    1146210 (E.D. Cal. Mar. 13, 2015) ("[a]t the screening stage … the Court must accept the factual

6    allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving

7    party"). Therefore, the Court finds Plaintiff's First Amendment claim against Holguin and Qaderi

8    may proceed.

9    **b.    Defendants Christy, Cabrera, McKeehan, and Reubart**.

10    Plaintiff's First Amendment claims against Defendants Christy, Cabrera, McKeehan, and

11    Reubart fail. Other than including their names in Claim 2, Plaintiff makes no references to the First

12    Amendment or retaliation connected to these four defendants. As such, the Court recommends

13    dismissal without prejudice of Plaintiff's First Amendment claims against these Defendants.

14    **c.    Defendant Treadwell**.

15    Plaintiff accuses Defendant Treadwell of intentionally tearing up an email message from

16    Danyele Madson, Assistant Director of Nevada Department of Corrections ("NDOC"), detailing

17    instructions for pursuing his civil suit, as well as throwing away Plaintiff's inmate request that

18    intentionally interfered with Plaintiff's attempts to review documents provided by the Attorney

19    General's Office. ECF No. 71 at 18. Plaintiff further accuses Treadwell of intentionally retaliating

20    against him for suing HDSP and its officers by repeatedly submitting Plaintiff's grievances with pages

21    missing resulting in grievances denials. *Id.* Finally, Plaintiff alleges Treadwell filed a false

22    disciplinary report against him after Plaintiff reported Treadwell to his shift supervisor. *Id.* Viewing

23    these facts in the light most favorable to Plaintiff, the Court finds the allegations are sufficient to state

24    a First Amendment retaliation claim against Treadwell.

25    **d.    Defendants Powers, Johnson, and Oliver**.

26    Plaintiff contends Defendant Powers, Administrator at the Offender Management Division

27    of the NDOC, "is generally responsible for review[ing] administrative claims and … transportation

28    between the prisons in" Nevada. ECF No. 71 at 19. Specific to the First Amendment retaliation

11

claim, Plaintiff alleges that after Powers learned of grievances and "violations" through registered mail, he "not only failed to remedy the wrong" but directly participated, approved or permitted Defendant Johnson to transfer Plaintiff between HDSP and ESP.  ECF No. 71 at 12.  Plaintiff alleges that as a result of this conduct, he lost his leg braces and medically necessary KOP medications.  *Id.* Plaintiff concludes that Johnson transferred him knowing ESP was "unable to provide[] the required treatment and/or relevant surgery" Plaintiff needed.  *Id.*  Plaintiff concludes he was "retaliator[il]y transferred."  *Id.*

 "When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist.  It doesn't matter what label is placed on the action or what other reasons may be behind it." *Blue v. Grannis*, Case No. CIV S-05-1256-GEB-EFB-P, 2009 WL 347742, at *6 (E.D. Cal. Feb. 11, 2009).  Here, Plaintiff's allegations, even viewed in his favor, fail to state a claim for First Amendment retaliation.  Plaintiff fails to allege facts supporting the conclusion that his transfer was "because of" a First Amendment protected activity.  *Rhodes*, 408 F.3d at 567-568.  Plaintiff does not allege a specific grievance or other form of speech he engaged in implicating Powers, Johnson or Oliver.  ECF No. 71 at 12 *compare id.* at 5-7 (against Holguin and Qaderi).  Plaintiff does not allege facts to support the inference that these three defendants knew (or were aware) Plaintiff was engaged in protected activity in any form.  ECF No. 71 at 12.  Plaintiff also fails to allege facts supporting the conclusion that his transfer did not advance a legitimate correctional goal.  *Id.*

 Plaintiff bears the burden of alleging facts from which the Court can infer the decision to transfer him was a retaliatory act rather than a legitimate exercise of the officials' administrative authority or discretion.  *See Blue*, 2009 WL 347742, at *6.  Based on the foregoing, the Court recommends Plaintiff's claim against Powers and Johnson based on an alleged First Amendment retaliation be dismissed without prejudice.

 Plaintiff's First Amendment retaliation allegations against Oliver also fail to state a claim. Plaintiff says Oliver placed him on High Risk Prisoner status and moved him to administrative segregation in retaliation for the exercise of First Amendment rights.  But these allegations are

conclusory. *See* ECF No. 71 at 21. There are virtually no facts alleged to support this claim. As such, the Court recommends Plaintiff's First Amendment retaliation claim against Oliver be dismissed without prejudice.

### e. Defendants Stolk and Rigney.

The Court finds Plaintiff fails to state a colorable claim of First Amendment retaliation against Defendants Stolk and Rigney for placing him on an unexplained alternative "loaf diet." ECF No. 71 at 20. Plaintiff alleges he was placed on the diet after engaging in a protest with other inmates to close their food slots to draw attention to staffing shortages in the prison resulting in delayed medical care, telephone calls, yard exercises, and showers. *Id.* at 12. Plaintiff represents his medical history contains a record of stomach issues and that the diet caused him "stomach ill and constant vomiting." *Id.* at 20-21. However, Plaintiff does not allege Stolk and Rigney were familiar with Plaintiff's medical history or the harmful effect the diet might have. *Id.* In fact, Plaintiff alleges Stolk and Rigney did not confirm Plaintiff's medical records before serving him the diet (ECF No. 71 at 20) thus undermining his argument that these Defendants acted with the knowledge or intention that doing so would make Plaintiff sick. *Rhodes*, 408 F.3d at 567 (First Amendment retaliation must involve a "purposeful act."). In sum, there is no basis to infer Stolk and Rigney acted on information that would support a retaliation claim. *See Id.* Thus, the Court recommends Plaintiff's First Amendment retaliation claim against Stolk and Rigney be dismissed without prejudice.

> ii. *Eighth Amendment deliberate indifference against Treadwell, McKeehan, Powers, Johnson, and Reubart.*

The Eighth Amendment deliberate indifference to a serious medical need inquiry requires a showing of "a *purposeful* act or failure to respond to a prisoner's pain or possible medical need." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081 (9th Cir. 2013). Despite asserting an Eighth Amendment violation against Defendants Treadwell, McKeehan, Powers, Johnson, and Reubart, Plaintiff fails to allege any of these Defendants acted to purposely deprive him of necessary medical treatment or otherwise failed to treat his serious medical needs. ECF No. 71 at 19-20. Rather, Plaintiff argues his transfer to ESP caused his KOP medications and braces to be misplaced. *Id.* While misplacements may arguably have increased Plaintiff's risk need for medical attention, the

Defendants' administrative decision does not support an Eighth Amendment violation. The Court recommends the deliberate indifference claims against Defendants Treadwell, McKeehan, Powers, Johnson, and Reubart be dismissed without prejudice.

### iii.    Fourteenth Amendment Equal Protection.

The Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated equally under the law. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Equal Protection Clause also protects prisoners from intentional discrimination based on religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), abrogated on other grounds by *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). In addition, heightened scrutiny applies when a plaintiff adequately alleges discrimination on the basis of sexual orientation. *United States v. Windsor*, 133 S.Ct. 2675 (2013).

In order to state an Equal Protection claim, a plaintiff must allege facts demonstrating defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class or treated the plaintiff differently than similarly situated individuals without any rational basis for doing so. *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). It is insufficient to allege a plaintiff is a member of a protected class and suffered some adverse action; there must be evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Freeman*, 125 F.3d at 737. Offensive statements about a prisoner's race, religion, or sexual orientation are insufficient to state an equal protection claim. *Freeman*, 125 F.3d at 738, abrogated on other grounds by *Shakur*, 514 F.3d at 878 ("As for being subjected to abusive language directed at [one's] religious and ethnic background, verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal quotation marks omitted).

Thus, in order to state a colorable Equal Protection claim, a plaintiff must allege facts sufficient to show that a particular defendant took action against him because of the plaintiff's membership in a protected class. *Iqbal*, 556 U.S. at 678-83 (2009). The defendant must undertake

the course of action because of, not in spite of, the adverse effects on an identifiable group.  *Id.*  Conclusory allegations of discriminatory motives are insufficient; specific, non-conclusory factual allegations are required.  *Id.*; *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

### a.    Defendants Holguin and Qaderi.

Plaintiff's description of Defendants Holguin and Qaderi's behavior—refusing to help him with his food and ignoring him when he fell unconscious—contains no mention of Plaintiff's race or nationality and, thus, fails to allege a discriminatory act.  *Davis*, 426 U.S. at 239-240.  Defendants alleged use of racial epithets after Plaintiff reported them to two different supervisors is simply insufficient to state an Equal Protection claim.  *Freeman*, 125 F.3d at 738 (finding offensive race-based language is not itself sufficient to allege an Equal Protection violation).  Rather, Plaintiff's facts suggest these Defendants acted in retaliation for his grievance filings.  The fact that Holguin and Qaderi's alleged retaliatory conduct involved racial epithets, while reprehensible if true, does not convert this event into an Equal Protection claim.  The Court recommends Plaintiff's Equal Protection claim be dismissed against Defendants Holguin and Qaderi.

### b.    Defendants Christy, Cabrera, Treadwell, McKeehan, Powers, Johnson, Reubart, Stolk, Rigney, and Oliver.

The Court finds Plaintiff fails to state an Equal Protection claim against Defendants Christy, Cabrera, Treadwell, Powers, Johnson, Reubart, and Oliver.  Plaintiff alleges no facts to support the inference that these Defendants acted "with intent and purpose to discriminate against … [him] based upon his race and alien background."  ECF No. 71 at 18; *Jeffers*, 267 F.3d at 913-914.

With respect to Defendant McKeehan, Plaintiff alleges he acted with discriminatory intent when he allegedly filed a false disciplinary charge against Plaintiff for attempting to access a locked conference room—an accusation that occurred in part because McKeehan allegedly did not understand Plaintiff's explanation because of Plaintiff's limited English.  ECF No. 71 at 18.  These facts do not support discriminatory intent.  Plaintiff argues McKeehan made assumptions about his intentions and failed to inquire into Plaintiff's motivations for trying to get into the conference room.  However, a failure to communicate does not state an Equal Protection violation.

With respect to Defendants Stolk and Rigney, Plaintiff alleges he was only one of a group of inmates given the loaf diet following the protest in which ESP inmates closed their food slots to protest staff shortages. ECF No. 71 at 21. Plaintiff avers nothing beyond a conclusory statement that the punishment was carried out based upon his race or nationality. *Id.*; *Remeidio v. Woodford*, 173 F. App'x 636, 638 (9th Cir. 2006) (finding the plaintiff failed to state a claim for disparate treatment based on his Asian background where the allegation failed to show prison officials declined to take adverse disciplinary actions against similarly-situated non-Asian inmates).

As demonstrated by the foregoing, the Court recommends Plaintiff's Equal Protection claims be dismissed without prejudice as alleged against Defendants Christy, Cabrera, Treadwell, McKeehan, Powers, Johnson, Reubart, Stolk, Rigney, and Oliver.

      C.    <u>Claim 3: First and Fourteenth Amendment Violations Against Defendant Zelaya.</u>

          *i.*    *First Amendment Retaliation.*

Allegations that prison officials intentionally interfered with a prisoner's disciplinary hearing in retaliation for filing grievances is sufficient to state a claim for First Amendment retaliation. *Harris v. Kim*, 483 F. App'x 329, 332 (9th Cir. 2012); *see also Crawford v. Beard*, Case No. C14-5578 MEJ (PR), 2015 WL 1737860, at *3 (N.D. Cal. Apr. 14, 2015) (finding defendants' interference with an ongoing inmate appeal may be the basis for a First Amendment retaliation claim). Here, Plaintiff alleges that after he submitted a grievance against Defendants Zelaya complaining about the alleged unlawful hearing, Zelaya violated his First Amendment rights by intentionally destroying evidence, failing to pass along kites as Zelaya was allegedly required to do once he became unit supervisor, and placing Plaintiff in segregation confinement for an extended period of time all in an attempt to interfere with Plaintiff's appeal of discipline. ECF No. 71 at 7. Plaintiff also alleges Zelaya conducted an unlawful disciplinary hearing pertaining to Plaintiff's escape attempt resulting in a conviction without due process that ultimately caused the deduction of funds from Plaintiff's inmate account. *Id.* at 7-8. The Court finds these factual allegations are sufficient to state a facial violation of Plaintiff's First Amendment rights by Zelaya and, as such, this claims may proceed. *Crawford*, 2015 WL 1737860.

1              *ii.      Fourteenth Amendment Due Process*.

2              "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of

3    life, liberty, or property; and those who seek to invoke its procedural protection must establish that

4    one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Inmates have a

5    constitutionally protected property interest in their inmate accounts.  *See Quick v. Jones*, 754 F.2d

6    1521, 1523 (9th Cir. 1985); *Vance v. Barrett*, 345 F.3d 1083, 1088 n.6 (9th Cir. 2003).  When a

7    protected interest exists and a prisoner faces disciplinary charges, prison officials must provide the

8    prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that

9    includes the charges, a description of the evidence against the prisoner, and an explanation for the

10   disciplinary action taken, (2) an opportunity to present documentary evidence and call witnesses,

11   unless calling witnesses would interfere with institutional security, and (3) legal assistance where the

12   charges are complex or the inmate is illiterate.  *Sigal v. Bean*, Case No. 2:20-cv-00755-RFB-DJA,

13   2022 WL 526136, at *9 (D. Nev. Feb. 21, 2022) (applying the three-part standard as set out in *Wolff*

14   *v. McDonnell*, 418 U.S. 539, 563-70 (1974).  Despite this, an inmate has no right to cross-examine or

15   confront witnesses in prison disciplinary hearings.  *Sigal*, 2022 WL 526136 at *9.  "[T]he

16   requirements of due process are satisfied if some evidence supports the decision by the prison

17   disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455

18   (1985).  However, the "some evidence" standard does not apply when a prisoner alleges that a prison

19   guard's report is false.  *Jones v. Lopez*, Case No. 3:00-cv-0509-ECR-VPC, 2007 WL 951658, at *2

20   (D. Nev. Mar. 26, 2007).

21              "When prison officials limit an inmate's efforts to defend himself, they must have a

22   legitimate penological reason" for doing so.  *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).

23   An inmate's right to present witnesses may legitimately be limited by "the penological need to

24   provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may

25   result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S.

26   491, 495 (1985).  Jail officials "must make the decision whether to allow witnesses on a case-by-case

27   basis, examining the potential hazards that may result from calling a particular person." *Serrano v.*

28   *Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003).

Plaintiff alleges Defendant Zelaya held a disciplinary hearing regarding Plaintiff's "escape" attempt and "possession of contraband" in which Zelaya refused to allow Plaintiff to present witnesses, despite the charge being based wholly on staff reports.  ECF No. 71 at 22.  Plaintiff also alleges Zelaya declined Plaintiff's request to present material evidence without explanation.  *Id*.  Plaintiff says Zelaya held the hearing and rendered judgment by himself, in contravention of HDSP regulations requiring a committee of three representatives to hear a case.  *Id.*  Plaintiff contends that, as a result, his inmate account was charged $50,029.87 in restitution for his alleged escape attempt without any meaningful explanation as to the charge or how the amount was assessed.  *Id.*

The Court finds Plaintiff sufficiently alleges the debit from his trust account was a deprivation of property done without due process.  *Sigal*, 2022 WL 526136, at *9.  While Zelaya was not required to allow Plaintiff to *confront* witnesses or conduct cross-examination, caselaw is clear that inmates facing disciplinary charges are entitled to a qualified right to "call witnesses and present evidence" in their favor where doing so does not pose a safety threat or undermine correctional goals.  *Id.*; *see also Strohmeyer v. Belanger*, Case No. 3:14-cv-00661-RCJ-WGC, 2021 WL 1097344, at *8 (D. Nev. Mar. 3, 2021), report and recommendation adopted, Case No. 3:14-cv-00661-RCJ-WGC, 2021 WL 1687116 (D. Nev. Mar. 22, 2021).  Plaintiff's allegation establish these basic due process rights were denied by Zelaya without any explanation and, therefore, in the absence of an identified safety risk or suggestion that doing so would undermine HDSP's correctional goals.  ECF No. 71 at 22; *Sigal*, 2022 WL 526136 at *9.

Moreover, where a plaintiff alleges the only evidence against him consisted of staff reports, both the right to call witnesses and present documentary evidence are implicated.  ECF No. 71 at 22.  Here, at the very least, Zelaya was required to explain "in a limited manner, the reason why witnesses were not allowed to testify," either as part of the record in the disciplinary hearing, or later in connection with a court proceeding.  *Strohmeyer*, 2021 WL 1097344 at *13; *Jones v. Drain*, Case No. 3:05-cv-0278-PMP-RAM, 2008 WL 8209061, at *5 (D. Nev. Feb. 6, 2008), report and recommendation adopted, 2008 WL 8209060 (D. Nev. Mar. 7, 2008) (citation omitted) ("[t]he burden of proving adequate justification for denial of a request to present witnesses or produce documentary

evidence rests with the prison officials.").  Accordingly, Plaintiff's Due Process claim may proceed against Zelaya.[1]

      D.    <u>Claim 4: The Fifth Amendment and Fourteenth Amendment Violations Against Defendants Rudolph, Zelaya, Faulkner, Garrett, Johnson, Reubart, and Rivas.</u>

          i.    *The Fifth Amendment Takings Clause.*

Plaintiff attempts to assert a Fifth Amendment takings clause claim based on withdrawal of funds from his inmate trust account.  ECF No. 71 at 23.  This claims was previously dismissed with prejudice and without leave to amend.  ECF No. 11 at 19.  "A dismissal with prejudice in federal court bars refiling of the same claim in the same district court."  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).  As such, Plaintiff's Fifth Amendment takings claims against Defendants Rudolph, Zelaya, Faulkner, Garrett, Johnson, Reubart, and Rivas must be dismissed with prejudice again.

          ii.    *Fourteenth Amendment Deprivation of Personal Property.*

Plaintiff seeks to bring a Fourteenth Amendment claim for an intent to deprive him of personal possessions misplaced or mishandled at HDSP.  ECF No. 71 at 24-25.  The Court dismissed this claim with prejudice and without leave to amend in its prior screening Order.  ECF No. 11 at 19. As such, the Court recommends dismissal with prejudice of Plaintiff's Fourteenth Amendment deprivation of property claim against Defendants Rudolph, Zelaya, Faulkner, Garrett, Johnson, Reubart, and Rivas.

      E.    <u>Claim 5: First, Fourth, Fifth, Eighth, and Fourteenth Amendment Violations Against Defendants Minev and Daniels.</u>

A supervisor will be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  To state a claim based on supervisory responsibility, a plaintiff must allege more than the supervisors knew about the constitutional violation.  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir.

---

[1]    The Court also notes that, although not dispositive of the due process inquiry, the fact that Zelaya allegedly conducted the disciplinary hearing against Plaintiff in contravention of HDSP regulations suggests Plaintiff received a minimal degree of procedural protections at his hearing.

2012).  The plaintiff must allege generally created policies and procedures that led to the violation in the absence of alleging "a specific policy" or "a specific event" instigated by them that led to the constitutional violations.  *Id.*  A plaintiff must also allege the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim—the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability.  *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

Here, Plaintiff attempts to state a claim based on supervisory liability against Defendants Minev and Daniels, Medical Director and Deputy Director of NDOC respectively for deliberate indifference to his serious medical needs.  ECF No. 71 at 26.  Plaintiff accuses Minev, who he alleges was in charge of the Utilization Review Panel responsible for approving treatment for his ankle injuries and surgery, of allowing a 140-day delay before the request was approved.  *Id.*  Plaintiff accuses Minev of failing to act on the grievances he submitted alleging unconstitutional acts.  *Id.*  Plaintiff states that Daniels "did not commit[] these relevant violations, [but] he became responsible for other Defendants … [and] failed to correct them [up]on [receiving] Grievances (Appeals) indicating that unconstitutional acts w[ere] occurring … . [Daniels] also created such policies and/or customs under which unconstitutional practices occurred."  *Id.*  Plaintiff provides no other facts describing each Defendant's alleged responsibility for or involvement in the alleged constitutional violations.

The Court finds Plaintiff fails to state supervisory liability against Minev and Daniels.  The allegations do not allow the reasonable inference that Minev was personally involved in the 140-day delay Plaintiff alleges or any other wrongful conduct.  *Henry A.*, 678 F.3dat 1003-04.  Supervisor liability cannot be based on conclusory allegations that a policy or procedure allegedly contributed to the violation as Plaintiff alleges here.  *Hydrick*, 669 F.3d at 942.  Even generally, Plaintiff fails to allege Minev or Daniels had the requisite mental state to establish deliberate indifference.  *Id.*  Failure to respond to a grievance, without more, does not qualify as deliberate indifference.  *Shakur v. Ryan*, Case No. CIV 14-2318-TUC-CKJ, 2015 WL 5043858, at *4 (D. Ariz. Aug. 27, 2015).  For these reasons, the Court recommends Plaintiff's claims against Defendants Minev and Daniels be dismissed without prejudice.

1

F.      42 U.S.C. § 15601 and 28 C.F.R. § 115.

2          Plaintiff alleges violations of 42 U.S.C. § 15601 and 28 C.F.R. § 115, which are two different

3   codified versions of the Prison Rape Elimination Act ("PREA"); *McCreary v. State*, Case No. 73743-

4   COA, 2019 WL 520047, at *1 (Nev. App. Feb. 8, 2019).  The PREA does not create a private action

5   under which Plaintiff may sue.  *See id.* at *2; *Grindling v. Diana*, Case No. 16-00424 ACK-KJM,

6   2016 WL 6080825, at *8 (D. Haw. Sept. 12, 2016), report and recommendation adopted as modified,

7   Case No. CV 16-00424 ACK-KJM, 2016 WL 6089687 (D. Haw. Oct. 17, 2016) ("the PREA does

8   not create a private right of action").  Thus, the Court recommends dismissal of Plaintiff's 42 U.S.C.

9   § 15601 and 28 C.F.R. § 115 claims with prejudice as amendment would be futile.  *Hatcher v.*

10  *Harrington*, Case No. 14-00554 JMS/KSC, 2015 WL 474313, at *5 (D. Haw. Feb. 5, 2015).

11

G.      Plaintiff's State Law Claims.

12          Plaintiff asserts state law claims under fifteen provisions of the Nevada Revised Statutes

13  ("NRS") and Nevada Administrative Code ("NAC") against all nineteen defendants.  Plaintiff asserts

14  claims under NRS 49.265, 41.0322, and various subsections of NRS 209.  ECF No. 71 at 15.  NRS

15  49.265 addresses the occupational privileges that may be asserted to shield an individual from

16  testifying under the U.S. and Nevada State constitutions.  *See* NRS 49.015.  Further, NRS 41.0322

17  establishes the administrative exhaustion requirements that must be fulfilled before bringing a claim

18  against NDOC, but does not provide a cause of action for relief.  The subsections of NRS 209 Plaintiff

19  cites also do not create private right of action under which Plaintiff may sue.  *See Ross v. Sandoval*,

20  Case No. 2:17-cv-02386-APG-GWF, 2017 WL 6000342, at *12 (D. Nev. Dec. 4, 2017); *Valenzuela*

21  *v. Nevada Dep't of Corr.*, 128 Nev. 941, 381 P.3d 672 (2012) (dismissing the plaintiff's claims under

22  NRS 209 on the basis that the statute merely describes the duties of the NDOC and does not provide

23  a civil remedy for violations thereof).

24          The Court also finds no decipherable claim asserted by Plaintiff under NAC Chapter 41,

25  450B.  This NAC chapter creates procedures the Attorney General must follow in the event a claim

26  for death or personal injury is filed against the state, its agencies or subdivisions.  NAC 41.100(1).

27  While violations of the NAC may be evidence of negligence or wrongdoing, the NAC does not create

28

a private cause of action. *Estate of Klementi By & Through Klementi v. Hartford Underwriters Ins. Co.*, Case No. 3:18-cv-00169-MMD-WGC, 2018 WL 3242683, at *5 (D. Nev. July 3, 2018).

In sum, Plaintiff's allegations of state law violations fail as a matter of law and, therefore, the Court recommends dismissal of all state law claims with prejudice.

## V.    ORDER

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Holguin, Qaderi, Christy, and Cabrera may proceed.

IT IS FURTHER ORDERED that Plaintiff's Fourteenth Amendment Due Process claim against Defendant Zelaya may proceed.

IT IS FURTHER ORDERED that Plaintiff's First Amendment retaliation claim against Defendants Holguin, Qaderi, Treadwell, and Zelaya may proceed.

IT IS FURTHER ORDERED that Defendants' Motion Requesting This Court Conduct Mandatory Screening of Plaintiff's Second Amended Complaint (ECF No. 75) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants who were previously served **and are represented** by the Nevada Attorney General's Office **must** file a responsive pleading to the above claims no later than **sixty (60) days** after the date this Order is entered.

IT IS FURTHER ORDERED that the Office of the Attorney General must provide notice as to whether it will accept service on behalf of Defendants Holguin, Christy, and Treadwell or, if service is not accepted, provide the last known addresses as to these individuals.[2]

IT IS FURTHER ORDERED that the Office of the Attorney General has **21 days** after the date of this Order to file a notice with the Court advising whether it is accepting service on behalf of Defendants Holguin, Christy, and Treadwell, or otherwise to provide the last known addresses for these three individuals. With respect to Defendant Christy, whom the Attorney General was unable to identify as of April 18, the Court orders the Office of the Attorney General to consult its records a second time and provide an updated status on the efforts to identify this Defendant.

---

[2] Mindful of the Attorney General's representation in its April 18, 2022 filing that he cannot accept service on behalf of Defendants Holguin and Christy as of the date of filing, the Court orders the Attorney General to provide an updated status on the Attorney General's ability to accept service for these named Defendants.

1   **VI.    RECOMMENDATION**

2       IT IS HEREBY RECOMMENDED that Plaintiff's Eighth Amendment deliberate

3   indifference claims against Defendants Faulkner, Treadwell, McKeehan, Oliver, Rivas, Powers,

4   Johnson, Reubart, Minev, and Daniels be DISMISSED without prejudice.

5       IT IS FURTHER RECOMMENDED that Plaintiff's Fourteenth Amendment Equal

6   Protection claims be DISMISSED without prejudice as to all Defendants.

7       IT IS FURTHER RECOMMENDED that Plaintiff's First Amendment retaliation claims

8   against Defendants Chirsty, Cabrera, McKeehan, Reubart, Stolk, Rigney, Powers, Johnson, Daniels,

9   Minev, and Oliver be DISMISSED without prejudice.

10      IT IS FURTHER RECOMMENDED that Plaintiff's state law claims be DISMISSED with

11  prejudice.

12      IT IS FURTHER RECOMMENDED that Plaintiff's Fourteenth Amendment deprivation of

13  property claims be DISMISSED with prejudice as to all Defendants as amendment would be futile.

14      IT IS FURTHER RECOMMENDED that Plaintiff's Fifth Amendment takings claims be

15  DISMISSED with prejudice as to all Defendants as amendment would be futile.

16      IT IS FURTHER RECOMMENDED that Plaintiff's claims for violations of 28 C.F.R. § 115

17  and/or 42 U.S.C. § 15601 be DISMISSED with prejudice as amendment would be futile.

18      IT IS FURTHER RECOMMENDED that Defendants' Alternative Motion to Dismiss

19  Plaintiff's Second Amended Complaint (ECF No. 75) be DENIED as moot.

20      IT IS FURTHER RECOMMENDED that if Plaintiff wishes to file a third amended

21  complaint, he **must** file a motion for leave to amend that satisfies the requirements of the Federal

22  Rules of Civil Procedure and Local Rule 15-1 requiring the proposed third amended complaint be

23  attached to his motion.  A motion for leave to file a third amended complaint, together with the

24  proposed third amended complaint, **must** be filed, if at all, **no later than July 22, 2022.**

25      IT IS FURTHER RECOMMENDED that any motion for leave to amend and/or proposed

26  third amended complaint filed after this date be dismissed as untimely by the Court.

27      Plaintiff is advised that any proposed amended complaint **must** be complete in and of itself.

28  That is, all claims and all facts Plaintiff wants the Court to consider **must** be included in the proposed

third amended complaint.  The Court cannot refer to any prior pleading or other documents to make Plaintiff's amended complaint complete.

DATED THIS 27th day of June, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).