**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| XIAO YE BAI, | Case No. 2:20-cv-2192-RFB-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| CALVIN JOHNSON, *et al.*, | |
| Defendants. | |

Before the Court is Defendant's Motion to Dismiss, ECF No. 157. For the reasons stated below, the Court denies Defendant's Motion.

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On June 21, 2024, Plaintiff filed a Third Amended Complaint. ECF. No. 152. On August 20, 2024, Defendant's filed a Motion to Dismiss. ECF No. 157. By September 10, 2024, the motion was fully briefed. ECF Nos. 158, 159. On September 19, 2024, Defendant's filed a Motion to Stay Discovery. ECF No. 160. The Motion was fully briefed by October 8, 2024. ECF Nos. 163, 164. On October 25, 2024, Magistrate Judge Elanya Youchah denied Defendant's Motion to Stay Discovery. ECF No. 164. On November 22, 2024, Defendant's filed a Motion for Reconsideration of the Motion to Stay the Case. The motion was fully briefed by December 20, 2024. On February 19, 2025, the Court held a Motion Hearing in which the Court denied Defendant's Motion for Reconsideration of the Motion to Stay the Case. ECF No. 174.

Plaintiff sues multiple defendants for alleged failure to provide medical treatment while incarcerated at Nevada Department of Corrections ("NDOC"). ECF No. 71. Plaintiff alleges that Defendants subjected him to medical mistreatment and retaliated against him after he broke both legs and ankles jumping over a fence at Southern Desert Correctional Center. Id. He alleges

that this mistreatment and retaliation violated his constitutional rights. Plaintiff is seeking monetary damages and injunctive relief. Id.

## II. LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. APT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## III. DISCUSSION

Defendants raise five issues in their Motion to Dismiss: (1) that the Third Amended Complaint ("TAC") does not establish a state law claim; (2) that Defendants are entitled to qualified immunity; (3) that Plaintiff fails to adequately plead Eighth Amendment Deliberate Indifference; (4) that Plaintiff fails to adequately plead First Amendment Retaliation; and (5)

that Plaintiff fails to adequately plead Fifth and Fourteenth Amendment Due Process violations. The Court addresses each in turn.

### a. Individual Versus Official Capacity Nature of Claim

Defendants assert that Plaintiff's TAC is *void ab initio* because Plaintiff does not name the State of Nevada on relation of the particular department. Defendants also assert that Plaintiff's claims based on Article 1, Section 6, of the Nevada Constitution should be dismissed because neither the Nevada Constitution, nor Nevada statutes, or precedent has recognized such a private cause of action. Plaintiff contends that the TAC need not name the state because the suit is primarily raised against the individuals who allegedly violated Plaintiff's rights.

In Will v. Michigan Department of State Police, the Supreme Court held that states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. 491 U.S. 58, 64-70, 109 S. Ct. Moreover, the Court noted that when a state official is sued in their official capacity, the suit is not brought against the official, but instead, the suit is brought against the state itself. Id. State officials sued in their individual capacities are "persons" within the meaning of 42 U.S.C. § 1983. Hafer v. Melo, 502 U.S. 21, 31, 112 S. Ct. 358, 365, 116 L. Ed. 2d 301 (1991). The Eleventh Amendment does not bar such suits, and state officers are not absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts. Id.

Here, Defendants argue that by failing to name the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit Plaintiff's TAC is in violation of NRS 41.031(2) and should be dismissed. Plaintiff asserts that the TAC is an action against the specific named defendants primarily being sued in their individual capacities. The Court finds that Plaintiff has abandoned the alleged official capacity claims against Defendants.

### b. Private Right of Action Under Nevada Constitution

3

Here, Defendants argue that by failing to name the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit Plaintiff's TAC is in violation of NRS 41.031(2) and should be dismissed. Plaintiff asserts that the TAC is an action against the specific named defendants primarily being sued in their individual capacities. The Court finds that Plaintiff has abandoned the alleged official capacity claims against Defendants.

Defendant contends that Plaintiff's claims asserting a private right of action pursuant to Article 1, Section 6 of the Nevada Constitution should be dismissed because there is no private right of action under the Nevada Constitution. The Court disagrees.

As a threshold matter, the Court finds that there is no controlling Nevada precedent on whether a private damages action exists for a claim of deliberate indifference to a serious medical need under Article I, Section 6 of the Nevada Constitution. The Court further finds that the use of certification rests in the sound discretion of the federal court. See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974) ("[Certification's] use in a given case rests in the sound discretion of the federal court."); In re McLinn, 744 F.2d 677, 681 (9th Cir. 1984) (certification is discretionary and should be limited to compelling situations). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). The Court finds, by applying the framework established by the Nevada Supreme Court in Mack v. Williams, that Plaintiff has brought a cognizable claim under the Nevada Constitution. 522 P.3d 434 (Nev. 2022). See also Vandecar v. Daniels, No. 2:20-CV-02150-ART-BNW, 2024 WL 4349430, at *4 (D. Nev. Sept. 30, 2024) (denying a motion to dismiss plaintiff's claims for damages under Article 1, §§ 6, 8, and 9 of the Nevada Constitution, noting that "Mack provides the framework for establishing whether a provision of the Nevada Constitution contains a right of action and whether that right of action permits damages actions"); Cardenas-Ornelas v. Wickham, No. 2:21-CV-00030-ART-VCF, 2024 WL 4368152, at *5 (D. Nev. Sept. 30, 2024) (allowing plaintiff's claim under Article 1, Section 6 of the

Nevada Constitution to proceed because the Mack "factors favor recognizing an implied right of action for damages").

### i. Legal Standard

In Mack v. Williams, the Nevada Supreme Court held that Article 1, Section 18 of the Nevada Constitution contained an implied right of action for damages. 522 P.3d at 441. The court first reasoned that under longstanding Nevada constitutional law, provisions like Article 1, Section 18 that prohibit the government from violating rights are "self-executing": they implicitly contain a cause of action, whether or not the legislature created one. Id. at 442. Recognizing that a "damages remedy does not automatically follow from the conclusion that a private right of action exists," the court formally adopted a three-part framework from California Supreme Court case Katzberg v. Regents of Univ. of Cal., 58 P.3d 339, 342-43 (2002), to "approach, on a case-by-case basis, whether to recognize a damages action for violations of an at-issue self-executing constitutional provision." Id. at 444. At step one, a court considers whether the language or history of the constitutional provision at issue evinces an intent to authorize or withhold damages. Id. Absent clear indication of intent, a court moves on to step two, a "constitutional tort analysis," which favors implying a constitutional remedy when doing so is "consistent with the purpose of and necessary to enforce the provision." Id. at 445, 448. Finally, at step three, a court considers whether "special factors counsel[] hesitation." Id. at 445.

### ii. Discussion

First, the Court finds that Article 1, Section 6 is a self-executing provision. Article 1, Section 6 of the Nevada Constitution mirrors the Cruel and Unusual Punishment Clause of the Eight Amendment to the United States Constitution. It states: "Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishments be inflicted, nor shall witnesses be unreasonably detained." Nev. Const. art. 1, § 6. Similarly to Article 1, Section 18, this provision "prohibit[s] certain conduct" by the government and imposes "a limitation" on government conduct, specifically by prohibiting excessive bail, excessive fines, cruel or

unusual punishment, and the unreasonable detention of witnesses. See Mack, 522 P.3d at 442 (quoting Jensen v. Cunningham, 250 P.3d 465, 481-82 (Utah 2011)). Under Nevada Supreme Court precedent, such "prohibitory provisions" are "self-executing." See id.; Wilson v. Koontz, 348 P.2d 231, 232, 233-34 (1960); Wren v. Dixon, 161 P.2d 722, 729 (1916); Alper v. Clark County, 571 P.2d 810, 811 (1977). It thus follows from these decisions that this self-executing provision "contains a private cause of action, regardless of any affirmative legislation authorization." See Mack, 522 P.3d at 442-443 (finding that "self-executing rights require no specific language or procedure for their private enforcement").

Next, the Court applies the three-part framework of Katzberg to assess the availability of money damages for violations of this self-executing provision. Id. First, the Nevada Supreme Court treats "the plain language of the Constitution as controlling to the extent the language therein expresses an intention to grant or to withhold a private right of action" for damages. Id. at 443. Here, the language of Article 1, Section 6 neither authorizes nor prohibits money damages. As with Mack, the Court does not find that the "absence of language in the Nevada Constitution regarding a private damages action to enforce [Article 1, Section 6] as a limitation to the judiciary's inherent powers to recognize such an action." Id. Thus, "although the Nevada Constitution does not address enforcement of [this] individual right[], it also does not foreclose an implied right of action for money damages based on the violation of [this] right[]." Id. Finding no affirmative indication of intent, the Court turns to the second part of this test.

The second part of the test, requiring a "constitutional tort analysis," relies on § 874 A of the Restatement (Second) of Torts. Id. at 445. Section 874A of the Restatement indicates that "a remedy should exist for violations of a prohibitory constitutional provision if such a remedy is (1) in furtherance of the purpose of the provision and (2) is needed to assure the effectiveness of the provision." Id. at 447 (citing Restatement (Second) of Torts § 874A (Am. Law Inst. 1979)). The Restatement also lists several factors to consider in applying that analysis: (1) "[t]he nature of the legislative provision," (2) "[t]he adequacy of existing remedies," (3) the extent to which a tort action "supplement[s] or interfere[s] with" existing remedies and enforcement, (4)

6

"[t]he significance of the purpose" of the provision, (5) "[t]he extent of the change in tort law," and (6) "[t]he burden" on the judiciary. Id. at 448 (citing Restatement (Second) of Torts § 874A cmt. h. (Am. Law Inst. 1979)).

These factors favor recognizing an implied right of action for damages. As the United States Supreme Court has noted, the "primary concern of the drafters [of the prohibition against cruel and unusual punishment] was to proscribe 'tortures,'" Estelle v. Gamble, 429 U.S. 97, 102 (1976), and the claim for deliberate indifference arose out of the recognition that a failure to treat incarcerated people "may actually produce physical 'torture'" and thus constituted the "unnecessary and wanton infliction of pain," which the framers intended to proscribe through the passage of the Eighth Amendment. Id. As Nevada's Constitution has a nearly identical prohibition, it is reasonable to infer that such concerns were likewise the origin for its adoption. Thus, the nature of the provision of Article 1, Section 6 is "both important and fundamental." Katzberg, 58 P.3d at 357 (2002); Mack, 522 P.3d at 449 ("The nature of the constitutional provision protects a fundamental right and is specific regarding the type of conduct which is prohibited."); Wickham, 2024 WL 4368152, at *5 ("Section 6 is, like Section 18, a significant Constitutional right."). Recognizing a private action for damages would further the purpose of this provision.

Recognizing a private action for damages is also needed to assure the effectiveness of the provision. As the Nevada Supreme Court concluded in Mack, this Court is not persuaded that other state law tort claims, such as negligence, would be an adequate alternative remedy for violations of Nevada's cruel and unusual punishment prohibition. Id. at 448 ("[W]e reject the NDOC parties' assertion that state tort law provides meaningful redress for invasions of the constitutional right at issue here."); see also Wickham, 2024 WL 4368152, at *5 (finding that existing alternative remedies to Article 1, Section 6 "like state tort law serve 'different interests' than constitutional guarantees").

As Mack noted, the Constitution imposes higher standards than state tort law and it is inappropriate to apply a lower standard to alleged constitutional violations. See Mack, 522 P.3d

7

at 448 ("A state actor's legal obligation under a state constitution 'extends far beyond that of his or her fellow citizens' under tort law[.]"); Wickham, 2024 WL 4368152, at *5 ("Tort law establishes generally duties between members of the community, while constitutional remedies provide higher standards[.]"). An implied right of action for damages ensures that a defendant's alleged violation is assessed by the higher standards required to protect and enforce the rights enshrined in the state constitution.

Additionally, state tort claims, such as negligence, evolved from the common law whereas a claim for deliberate indifference arises from the Nevada Constitution. These different legal bases provide distinct frameworks for establishing claims. For example, negligence claims require a case-by-case inquiry into the existence of a duty. In a constitutional claim, however, such a duty is established by the Nevada Constitution. Thus, in an ordinary negligence claim, "the reasonableness of the health care provider's actions can be evaluated by jurors on the basis of their common knowledge and experience," and, in a professional negligence claim, "the jury can only evaluate the plaintiffs claim after presentation of the standards of care by a medical expert." Szymborski v. Spring Mountain Treatment Ctr., 403 P.3d 1280, 1284-85 (Nev. 2017). Unlike either an ordinary or professional negligence claim, the legal obligation not to engage in cruel and unusual punishment does not arise out of a jury's evaluation of community or medical standard, but out of the Constitution. When a plaintiff brings a case alleging a constitutional violation, the court determines the existence of a duty as a constitutional matter, rather than requiring the plaintiff to establish such a duty through medical expert testimony or reliance on a jury's common knowledge or experience. More generally, while the contours of a state tort claim, such as whether a duty has been breached, are typically resolved by juries, the contours of a constitutionally provided protection are generally established by a court, as this is the entity that is charged with interpreting constitutional rights. See Wisconsin v. Mitchell, 508 U.S. 476, 483 (1993); R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 381 (1992); Tom v. Sutton, 533 F.2d 1101, 1105-06 (9th Cir. 1976).

Finally, the Nevada Legislature has erected additional barriers to state tort claims that are not applicable to state constitutional claims. For example, in order to bring a medical malpractice claim, plaintiffs must provide an affidavit from a medical expert. See Limprasert v. PAM Specialty Hosp. of Las Vegas LLC, 550 P.3d 825, 831 (Nev. 2024) ("The Legislature has created a tightly scripted scheme for professional negligence actions in Nevada that limits recovery for noneconomic damages, mandates settlement conferences, and more."). The failure to do so leads to dismissal. Id. ("[T]he general rule under Nevada's statutory scheme is that any professional negligence action filed without a supporting affidavit must be dismissed."). Additionally, Nevada caps punitive damages on tort claims, but no similar cap exists for claims of deliberate indifference. For all these reasons, state tort claims are not a meaningful alternative remedy for constitutional violations.

While the Nevada Supreme Court primarily considered the existence of alternative remedies in their analysis, none of the other Restatement factors disfavor recognizing a private right of action. Mack, 522 P.3d at 448; see also Katzberg, 58 P.3d at 357. Rights of action for Section 6 would not interfere with existing remedies and enforcement, nor would it burden the judiciary. Courts will evaluate claims under this right of action using the same well-developed standards they regularly apply for alleged Eight Amendment violations. See e.g., Wolf v. Nevada ex rel. Nevada Dep't of Corr., No. 3:22-cv-00308-MMD-CSD, 2024 WL 2051623, at *6 (D. Nev. Feb. 23, 2024), report and recommendation adopted, 2024 WL 1406554 (D. Nev. Apr. 1, 2024) ("[C]ourts within this district have applied the same legal standard to Article 1, Section 6 of the Nevada Constitution as are applied to the Eighth Amendment, and have allowed such claims to proceed in federal court."); Meeks v. Nev. Dep't of Corr., 3:18-cv-00431-MMD-WGC, 2020 WL 8084979, at *19 (D. Nev. Nov. 10, 2020), report and recommendation adopted, 2021 WL 53619 (D. Nev. Jan. 6, 2021) ("Courts within this district have applied the same legal standards to the cruel and unusual punishment corollary included in Article 1, Section 6. . . as are applied to the corollaries in the United States Constitution, and have allowed such claims to proceed."); Vickers v. Godecki, No. 2:20-cv-01401-GMN-NJK, 2023 WL 2435110, at *2 (D.

9

Nev. Mar. 8, 2023) ("[The] Court applies the same legal standards to the cruel and unusual punishment provision in Article 1, Section 6 of the Nevada Constitution as it does to the cruel and unusual punishment provision of the Eighth Amendment of the U.S. Constitution."). As this analysis favors a damages action to vindicate deliberate indifference rights under the Nevada Constitution, this Court moves to the third part of the test.

The Nevada Supreme Court identified deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages as the relevant special factors to consider in recognizing a damages action. Mack, 522 P.3d at 449. First, the Court finds no legislative judgments regarding a damages action for constitutional violations exists to which to accord deference. Id. Second, a private right of action for money damages would not impose new limitations on government conduct, given the developed status of deliberate indifference jurisprudence. Id. Third, a private right of action for damages would impact legislative fiscal policy if plaintiffs succeed in their suits against state actors. Fourth, a damages action for retrospective harm presents no practical issues of proof different from other typical cases managed by the judiciary. Id. Fifth, the Court is equipped to assess damages in this case. Damages simply do not represent a revolutionary or remarkable remedy, but, instead, remain a traditional remedy for legally recognized wrongs. Id. (internal quotation marks omitted). Hence, the overwhelming force of the special factors support identification of a private right of action.

Accordingly, considering the results of the Nevada Supreme Court's three-part test, this Court will allow Plaintiff's state cause of action to proceed beyond this stage.

### c. Eighth Amendment Deliberate Indifference

Plaintiff alleges he was subjected to cruel and unusual punishment by Defendants because they were aware of Plaintiff's serious injury and medical needs prior to his surgery in September 2019, yet refused to take reasonable measures to address them. Plaintiff alleges defendants were aware that he was unable to walk about his cell because of his leg injuries, yet Defendants refused to bring Plaintiff his food or medication. Additionally, Plaintiff alleges

medical treatment in relation to surgery was withheld for over a year. Defendants do not address Plaintiff's allegations of deliberate indifference, but broadly assert that the indifference was not ongoing.

To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference. Deliberate indifference is a high legal standard beyond malpractice or gross negligence. A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Balla v. Idaho, 29 F.4th 1019, 1021 (9th Cir. 2022). Deliberate indifference to medical needs can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Egberto v. Nev. Dep't of Corr., 678 Fed. Appx. 500, 502 (9th Cir. 2017). "A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

Here, Plaintiff alleges that although Defendants were aware of his need for medication and doctors' visits monitoring his post-operation recovery, they deprived him of medical attention and medication. The Court agrees with and incorporates by reference Plaintiff's argument that he has sufficiently and specifically alleged facts as to the individual Defendants for Count One and Count Four. Thus, the Court finds that Plaintiff has adequately pled his Eighth Amendment deliberate indifference claim.

### d. First Amendment Retaliation

Plaintiff alleges Defendants retaliated against him after he filed grievances and complaints regarding their refusal to provide him with food, water, or medication. Plaintiff contends Defendants harassed him, in retaliation, by keeping the lights in his cell on throughout the night, using racial epithets, and filing false disciplinary actions. Defendants assert that

11

Plaintiff does not raise allegations to support this claim that show he was harmed in a way that was "more than minimal."

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

Plaintiff alleges Defendants took several retaliatory adverse actions against him including depriving him of food and water and medication as well as subjecting Plaintiff to false disciplinary actions because Plaintiff filed grievances against Defendants. Defendants alleged actions had a chilling effect on Plaintiff and made him reluctant to report ongoing violations. This is sufficient at this stage for this claim to move forward.

### e. Fourteenth Amendment Due Process

Plaintiff alleges Defendants have deprived him of the money in his NDOC inmate account, in which he has a protected property interest without the proper process. Plaintiff contends he was entitled to an opportunity to be heard at a meaningful time and in a meaningful manner regarding the basis and amount of the deduction. Plaintiff asserts that Defendants have deprived him of $3,000 and charged him with a debt of over $15,000. Defendants assert that they lawfully deducted the funds from Plaintiff's account pursuant to NRS 209.246(1)(a)(2)(1).

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process. To establish a claim under 42 U.S.C. § 1983 for deprivation of procedural due process, the claimant must establish: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. Vance v. Barrett, 345 F.3d 1083, 1086 (9th Cir. 2003). More specifically, "[i]nmates have a property interest in funds held in prison accounts. Thus, inmates are entitled to due process with respect to any deprivation of this money." Id.

Plaintiff has properly alleged a Due Process violation. He alleges that a.) he had money in his account, b.) NDOC officials Applying the factors provided by the Supreme Court of Nevada: (1) Plaintiff had a property interest in the money in his prison account. (2) Plaintiff asserts that NDOC violated his property interest by taking $3,000 out of his account; (3) Plaintiff asserts that he was not provided an opportunity to be heard at a meaningful time and in a meaningful manner regarding the deduction. Thus, Plaintiff's claim of Fourteenth Amendment due process violations survives the instant Motion to Dismiss.

### f. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and it "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (brackets in original omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is

doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (brackets in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. Further, the right must be defined at "the appropriate level of generality . . . [and the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also Ashcroft, 563 U.S. at 741-42.

### i. Eighth Amendment Claim

At the time of the events in question, it was well established that prison staff who purposefully ignored or failed to respond to a prisoner's known serious injury and repeated requests for treatment constituted deliberate indifference to that injury. Jett v. Prenner, 439 F.3d 1091, 1098 (9th Cir. 2006) (holding that failing to address a prisoner's pain and offer appropriate treatment establishes deliberate indifference). That was the case even when the "defendants provided medical care, medications, and specialist referrals." See Snow, 681 F.3d at 986 (finding that delay, denial, and interference in providing hip surgery for two years constitutes deliberate indifference despite the fact that plaintiff was seen by several healthcare providers throughout the period). Plaintiff has plausibly alleged, as noted previously, that various Defendants failed to take steps within their respective authority to allow Plaintiff to receive treatment for his injuries. Such conduct was clearly established as unconstitutional. See Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal citations omitted).

Additionally, it was also well established by 2021 that the failure to address, or disregarding a prisoner's ongoing acute pain, was unconstitutional. See Peralta, 744 F.3d at 1086. Plaintiff has also plausibly alleged that all of the Defendants disregarded her chronic acute pain.

### ii. First Amendment Retaliation

The Court also finds that the law was clearly established as to the alleged constitutional of the First Amendment violation. At the time of the alleged incidents in this case, it was clearly

14

established that threats or related conduct were unconstitutional. The "adverse action" taken by the state actor "need not be an independent constitutional violation." Watson v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). "[T]he mere threat of harm can be an adverse action . . ." Bordheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009). It is sufficient for a plaintiff to allege that the adverse action either (a) had a "chilling effect" – that is, that it "would chill or silence a person of ordinary firmness from future First Amendment activities," or (b) that he "suffered some other harm" that is "more than minimal." Watson 668 F.3d at 1114; citing Brodheim at 1269. Thus, the alleged conduct in this case was known to be unconstitutional at the time of the conduct.

### iii. Fourteenth Amendment Due Process

Finally, it was clearly established at the time of the alleged conduct in this case that it was unconstitutional to deprive an inmate of his property or money without some form of due process. The Due Process clause, at a minimum, requires "some form of hearing . . . before the owner is finally deprived of a protected property interest." Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (internal citations omitted). This requirement cannot be overridden or negated by a state statute. Id. at 436 (explaining that a taking under an "established state procedure" still violates due process when the taking occurs "without according [a individual] proper procedural safeguards.").

### IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's [157] Motion to Dismiss is **DENIED.**

**DATED:** March 31, 2025



**RICHARD F. BOULWARE II**
**UNITED STATES DISTRICT JUDGE**

15